IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID E. HENRY, M.D.,<br><br>            Plaintiff,<br><br>vs.<br><br>ADVENTIST HEALTH CASTLE<br>MEDICAL CENTER and ALAN<br>CHEUNG, M.D.,<br><br>            Defendants. | CIV. NO. 18-00046 JAO-KJM<br><br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT, ECF<br>NO. 37 |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, ECF NO. 37

## I. INTRODUCTION

Plaintiff David E. Henry, M.D. ("Plaintiff") asserts claims for

violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e-5 et seq., against Defendant Castle Medical Center, dba Adventist Health

Castle[1] ("Defendant").[2]  Compl., ECF No. 1.  Plaintiff alleges that Defendant

---

[1] Defendant asserts that Plaintiff incorrectly stated Defendant's name as "Adventist Health Castle Medical Center."  ECF No. 17 at 2.  The Court uses the name given by Defendant.

[2] Dr. Alan Cheung, M.D. ("Dr. Cheung") was a named defendant in the Complaint.  ECF No. 1.  After Dr. Cheung filed a Motion to Dismiss for failure to state a claim, ECF No. 9, Plaintiff voluntarily dismissed Dr. Cheung as a defendant, ECF No. 14.

discriminated against him because of his race and retaliated against him after he complained about the discrimination.  *Id.*

Currently before the Court is Defendant's Motion for Summary Judgment, ECF No. 37.  Based on the following, the Court GRANTS Defendant's Motion for Summary Judgment.

## II. <u>BACKGROUND</u>

**A.    Factual Background**

Plaintiff is a board-certified general and bariatric surgeon, who completed his general surgery residency in 2014 and his bariatric surgery fellowship in 2015.  Def.'s Concise Statement of Facts ("CSF") ¶ 1, ECF No. 38.[3] Plaintiff is licensed to practice medicine in Hawaiʻi.  *Id.* ¶ 2.  He specializes in state-of-the-art laparoscopic and minimally invasive surgery.  *Id.*  Plaintiff entered into a Physician Recruitment Agreement ("Recruitment Agreement") and an Emergency Department Call Coverage and Uninsured Patient Services Agreement ("On-Call Agreement") with Defendant in 2015.  *Id.* ¶¶ 4, 5; Def.'s Ex. 2, ECF No. 38-5; Def.'s Ex. 11, ECF No. 38-14.  Under the Recruitment Agreement, Plaintiff was to operate a full-time private practice of medicine in his specialty on Oahu.

---

[3]  Where a fact is not in dispute, the Court cites directly to Defendant's CSF. *See* Local Rule 56.1(g).

CSF ¶ 4. Under the On-Call Agreement, Plaintiff agreed to be on call for Defendant's emergency department at least five days per month. *Id.* ¶ 6.

From September 1, 2015 to June 28, 2016, Plaintiff was a member of Defendant's medical staff, was granted clinical privileges at Defendant's hospital, and performed both general and bariatric surgeries at the hospital. *Id.* ¶ 3. Plaintiff leased space at the hospital's outpatient clinic for his private medical practice. *Id.* ¶ 22. Plaintiff was allowed to use Defendant's operating rooms for his private patients upon request. *Id.* ¶ 23. Plaintiff also had clinical privileges and performed general surgeries at The Queen's Medical Center. *Id.* ¶ 19.

Plaintiff, who is Caucasian, allegedly complained to Defendant of discrimination. Decl. of David E. Henry, M.D. ("Henry Decl.") ¶¶ 2, 22, ECF No. 41-1. After this complaint, Defendant initiated a peer review of seven of Plaintiff's surgeries. *Id.* ¶¶ 9, 22. As a result of this peer review, Defendant suspended Plaintiff's clinical privileges and terminated the On-Call Agreement in June 2016. *Id.* ¶ 9. It appears that Defendant's Medical Executive Committee ("MEC") then conducted a review of Plaintiff's cases and issued recommendations via letter in August 2016. *See* Pl.'s Ex. E, ECF No. 40-8.[4] A Fair Hearing Panel upheld the

---

[4] The August 26, 2016 letter containing the MEC's decision (as well as the underlying documentation) was not provided by either party.

(continued . . .)

MEC decision with some additional recommendations in September 2017,[5] and Defendant's appeal board upheld the MEC decision in January 2018.  Henry Decl. ¶ 11; Pl.'s Ex. E, ECF No. 40-8; Pl.'s Ex. F, ECF No. 40-9.  According to Plaintiff, no patient ever complained about the quality of Plaintiff's care, and a review of the relevant cases by Dr. Garth Jacobsen, a professor of surgery, found that Plaintiff met the standard of care.  Henry Decl. ¶¶ 9, 10.

## B.    Procedural History

Plaintiff filed the Complaint pro se on February 2, 2018, alleging one count of racial discrimination and one count of retaliation for engaging in protected activities.  ECF No. 1.  On September 10, 2018, Defendant filed a Motion for Summary Judgment (the "Motion"), ECF No. 37, and a Concise Statement of Facts in support of the Motion, ECF No. 38.  On October 11, 2018, Plaintiff filed pro se

---

[5] The Fair Hearing Panel Report additional recommendations included, in relevant part: (1) the remediation training program must be mutually agreed upon by Plaintiff and the MEC; (2) "[t]he MEC should agree in advance to accept the findings of the [remediation training] program"; (3) if needed, Defendant should work with Plaintiff to secure a loan at "very favorable terms" for the program; (4) upon successful completion of the program, Plaintiff's privileges (with restrictions) and the On-Call Agreement should be reinstated; (5) those restrictions were that Plaintiff must have at least three laparoscopic cases proctored by mutually agreed upon Defendant staff or an outside consultant; and (6) once that review was complete, Plaintiff would have full privileges restored.  Pl.'s Ex. E, ECF No. 40-8.

his Opposition, ECF No. 40, and his Responsive Concise Statement of Facts, ECF

No. 41.  On December 14, 2018, a hearing was held at which Plaintiff was

represented by counsel.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) mandates summary

judgment "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th

Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried

its burden under Rule 56[(a)], its opponent must do more than simply show that

there is some metaphysical doubt as to the material facts [and] come forward with

specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." (citation and quotation marks omitted)).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

///

///

# IV.  DISCUSSION

## A.    Pro Se Filings

As an initial matter, Plaintiff's attorney, Mr. John Winnicki, advised the Court at the hearing that another attorney, Mr. Robert Meals, had edited Plaintiff's pro se pleadings.  Accordingly, the Court addresses whether Plaintiff's pro se filings should be construed liberally and concludes that it will "liberally construe the 'inartful pleading'" of Plaintiff.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).

The Court is concerned by the fact that Plaintiff filed several pleadings as a pro se litigant when, in actuality, he received some assistance from an attorney in drafting those filings.  Generally, the Court construes pro se filings liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citations, quotation marks, and italics omitted)).  However, "allowing a pro se litigant to receive such latitude in addition to assistance from an attorney would disadvantage the nonoffending party."  *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1222 (D. Haw. 2010) (quoting *Ricotta v. State,* 4 F. Supp. 2d 961,

986 (S.D. Cal. 1998)); *see also Casumpang v. Hawaiian Commercial & Sugar Co.*, 2013 WL 6191087, at *7 (D. Haw. Nov. 25, 2013), *aff'd*, 712 F. App'x 709 (9th Cir. 2018).  Further, such "ghost-writing" by an attorney evades the responsibilities imposed on counsel by Federal Rule of Civil Procedure 11.  *See Smallwood*, 730 F. Supp. 2d at 1222.  Lastly, it implicates the Rules of Professional Responsibility concerning conduct involving dishonesty, fraud, deceit, or misrepresentation.  *See id.*

Although Mr. Winnicki represented at the hearing that Mr. Meals edited Plaintiff's pleadings, the extent to which Mr. Meals assisted Plaintiff is not otherwise clear.  Thus, in an abundance of caution, the Court will construe Plaintiff's filings liberally.  Even under this standard, however, the Court finds in favor of Defendant.

## B.  Motion for Summary Judgment

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that Plaintiff is not protected under Title VII because he is an independent contractor rather than an employee.  ECF No. 37 at 2.  Plaintiff disagrees, arguing that he is an employee, or at least, that there is a genuine issue of material fact concerning whether he is an employee or an independent contractor.  ECF No. 40 at 11-12.

Under Title VII, it is unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

"Title VII protects employees, but does not protect independent contractors." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). The Ninth Circuit utilizes the *Darden* test to determine whether an individual is an independent contractor or an employee for Title VII purposes. *See Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010) (applying *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992)). The *Darden* test evaluates "the hiring party's right to control the manner and means by which the product is accomplished," and utilizes the following non-exclusive factors:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when

9

and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989)).  No one factor is decisive.  *Id.* at 324; *see also Aymes v. Bonelli*, 980 F.3d 857, 861 (2d Cir. 1992) ("The factors should not merely be tallied but should be weighed according to their significance in the case.").

In the summary judgment context, several Circuits have found no employment relationship when physicians challenged termination of clinical privileges.  *See Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 343 (8th Cir. 2006) (collecting cases); *but see Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 231 (2d Cir. 2008) (holding plaintiff physician had "demonstrated a genuine factual conflict regarding the degree of control [the hospital] exercised over her" and stating that "[w]hile summary judgment may be appropriate in some cases concerning staff physicians suing hospitals, it is not appropriate in all").

In *Cilecek v. Inova Health System Services*, 115 F.3d 256, 260 (4th Cir. 1997), the Fourth Circuit noted that the consideration of the *Darden* factors "must relate to the particular relationship under consideration."  The Fourth Circuit explained how the unique nature of the hospital-physician relationship necessarily

involves a degree of regulation by the hospital, and accordingly, such regulation

ordinarily does not give rise to an employment relationship:[6]

> All of these [hospital] regulations, however, relate to the
> professional standard for providing health care to patients
> for which both [physicians] and [hospitals] had
> professional responsibility to their patients. While [the
> doctor] certainly retained a professional independence in
> performing professional services, he also shared a
> professional responsibility to cooperate with the hospitals
> to maintain standards of patient care, to keep appropriate
> records, and to follow established procedures. This
> *shared control* exists both for employee doctors and for
> doctors merely enjoying practice privileges at a facility.
> If the hospitals did not insist on such details in the
> performance of professional services by doctors at their
> facilities, they would be exposing themselves to
> recognized professional liability. Because of the
> overarching demands of the medical profession, the
> tension in professional control between doctors and
> hospitals for medical services rendered at hospitals is not,
> we believe, a reliable indicator of whether the doctor is
> an employee or an independent contractor at the hospital.

115 F.3d at 260 (emphasis added).

Similarly, an on-call arrangement between a physician and hospital

does not render the doctor an employee of the hospital. In *Alexander v. Rush*

---

[6] According to the plaintiff in *Cilecek*, the hospital regulated "taking
medical histories; conducting physical exams, tests and other procedures; patient
progress notes; the manner of issuing patient medical orders; prerequisites and
post-requisites to surgical procedures; ordering and administration of medications
and medical devices; obtaining consultations and referrals; and making entries in
medical records." 115 F.3d at 261-62.

*North Shore Medical Center*, 101 F.3d 487, 493 (7th Cir. 1996), the Seventh

Circuit explained that the plaintiff physician did not become an employee due to

the hospital's requirements that the plaintiff be on call a specified amount of time

per week because the physician's work was still "essentially within the control of

the [physician]." *Id.* (citing *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d

435, 438-39 (7th Cir. 1996)).

The Court applies *Darden* and other relevant caselaw to Plaintiff's

case and finds that as a matter of law Plaintiff was an independent contractor rather

than an employee for Title VII purposes.

Several *Darden* factors support finding an independent contractor

status in this case, for example: the provision of employee benefits, the tax

treatment of the hired party, the method of payment, and the location of the work.

Defendant did not provide Plaintiff with employee benefits, such as malpractice

insurance, paid vacation, sick leave, parental leave, paid holidays, a pension plan,

retirement benefits, health insurance, worker's compensation benefits, or

withholding of social security taxes. CSF ¶ 37; Def.'s Ex. 1, ECF No. 38-4 ¶¶

114-117, 175-77, 181; Def.'s Ex. 5, ECF No. 38-8 ¶¶ 22, 23; Def.'s Ex. 11, ECF

No. 38-14 at 10. Third party payors whom Plaintiff billed directly paid Plaintiff's

surgery income. CSF ¶¶ 7, 8. Defendant paid less than ten percent of Plaintiff's

earnings, and the amount it did pay Plaintiff was not uniform.  *Id.* ¶¶ 11, 37, 40.

Plaintiff reported his income from Defendant on a 1099 tax form, and never

received a W-2 form from Defendant.  *Id.* ¶ 39.  While Plaintiff performed all of

his bariatric surgeries at Castle, Henry Decl. ¶ 7, Plaintiff leased space in

Defendant's outpatient center and saw his own elective general surgery patients in

that space.  CSF ¶¶ 20, 22.  Further, Plaintiff also worked at another hospital: he

was on The Queen's Medical Center on-call list, obtained general surgery clinical

privileges at that hospital, and performed surgeries there.  *Id.* ¶ 19; Def.'s Ex. 1,

ECF No. 38-4 ¶¶ 26-28, 126.

      While Defendant regulated some aspects of Plaintiff's practice (such

as which surgical assistants to use, electronic medical record use, and how to

complete patient notes), *see* Henry Decl. ¶ 13, these regulations are of the type

discussed in *Cilecek*: they function as part of the "shared control" that exists

between hospital and physician based on their respective professional liabilities.

*Cilecek*, 115 F.3d at 260.  Plaintiff points to Defendant's use of an evaluation form

from the Metabolic and Bariatric Surgery Accreditation and Quality Improvement

Program ("MBSAQIP"), ECF No. 40 at 6-7, as indicative of the control Defendant

exercised.  However, it appears that Defendant used this evaluation form as part of

its accreditation — MBSAQIP is an accreditation program of the American

College of Surgeons and the American Society of Metabolic and Bariatric

Surgeons. *See id.* at 1-2. These regulations did not create an employment

relationship.

Moreover, Plaintiff's On-Call Agreement was akin to the agreement

in *Alexander*. Under the On-Call Agreement, Defendant paid Plaintiff to be on call

at least 5 days a month in the emergency department, CSF ¶¶ 5, 6, 9. Defendant's

payment of Plaintiff was not like a salary: while on-call, Plaintiff was paid $100

per 24-hour shift (if no emergency intervention) or $500 for each emergency

intervention. *Id.* ¶ 9. Thus, Plaintiff's earnings varied depending on how many

emergency interventions occurred, on how many days Plaintiff was available to be

on-call, and the general surgery call schedule. *Id.* ¶ 11. While Plaintiff was

required to be on call at least five days per month, Defendant did not have

complete control over when Plaintiff would be on call. Before the beginning of

each month, Plaintiff informed Defendant of his availability and, under the On-Call

Agreement, Defendant was required to make "best efforts" to accommodate his

availability. ECF No. 38-4 ¶ 105. While on call, Plaintiff was not required to be

on site unless he was informed that an emergency intervention was necessary. *Id.*

¶ 110. Plaintiff could also perform his own elective surgeries while on call, as long

as he arranged for backup coverage. CSF ¶ 13.

Although not an enumerated *Darden* factor, the Ninth Circuit has also determined that a contract with clear language stating that the plaintiff would be considered an independent contractor, not an employee, supports a finding of independent contractor status. *See Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998). In the instant case, Defendant and Plaintiff made clear that they were creating an independent contractor relationship: prior to Plaintiff beginning to work at the hospital, the two parties signed two written agreements that expressly characterized Plaintiff as an independent contractor. ECF No. 38-5 at 12-14; ECF No. 38-14 at 11-14. This of course strongly suggests that Plaintiff was an independent contractor.

Several *Darden* factors support finding an employee status in this case, including: the skill required, the source of the instrumentalities and tools, and the hired party's role in hiring and paying assistants. Plaintiff performed surgical work that required much skill and training. *See* CSF ¶¶ 1, 2. Defendant provided the instrumentalities and tools to Plaintiff. Henry Decl. ¶ 15. Defendant hired, supervised, and paid the staff who assisted Plaintiff. Henry Decl. ¶ 18. These factors, however, do not neutralize the other factors and considerations in favor of a finding that Plaintiff was an independent contractor.

Plaintiff heavily relies on *Salamon* to contend that he was Defendant's employee. He argues that Defendant's peer review process was akin to the quality assurance program in *Salamon* that the Second Circuit found created an employment relationship.

While the Second Circuit in *Salamon* found an employment relationship, it also recognized that other courts have instead "found that hospital peer review programs do not constitute exercises of control over the manner and means of physician practice." *Salamon*, 514 F.3d at 229 (citing *Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004); *Cilecek*, 115 F.3d at 262; *Alexander*, 101 F.3d at 493; and *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 273 (5th Cir. 1988)). However, *Salamon* determined that in its case the hospital's "quality assurance program exceeded the control exerted in [the other cases], particularly as evidenced by what occurred after the alleged instances of harassment." *Id.*

According to the *Salamon* plaintiff, after she complained of sexual harassment by Dr. Michael C. Moore (a hospital administrator), Dr. Moore and several complicit doctors used the hospital "quality assurance program" to retaliate against her. *Id.* at 220. The *Salamon* plaintiff alleged that the defendants accordingly began to intensively review nearly every one of her cases, on a continuous basis, and continued that practice for years. *Id.* at 229.

16

*Salomon* reasoned that state and federal statutes and regulations "did not dictate the [hospital's] detailed treatment requirements." *Id.* at 230. Also, *Salomon* explained that, unlike those other cases that found an independent contractor relationship, the defendants in *Salomon* "did not merely review the quality of [plaintiff's] patient treatment outcomes but went further, by mandating performance of certain procedures (esophageal dilatation) and the timing of others (outpatient endoscopies), directing which medications she should prescribe, and recommending changes to her practice based on their financial impact to the department." *Id.* at 229. Further, *Salomon* addressed the motivations of the hospital, concluding that the requirements forced on the plaintiff were "aimed at maximizing [the hospital's] revenue and punishing her for complaining about Moore's harassment." *Id.* at 230. Thus, *Salomon* determined that "a reasonable fact-finder could conclude from the present record that the quality assurance standards extended beyond mere health and safety concerns or ensuring [plaintiff's] qualifications," and reversed and remanded the case. *Id.* at 231.

Under the present record, even construing all evidence and inferences therefrom on behalf of Plaintiff, there is no genuine issue as to whether the peer review process created an employment relationship. Plaintiff presents his declaration and two relevant exhibits to support his argument, but does not present

enough specific facts to show that the peer review process "extended beyond mere health and safety concerns or ensuring [plaintiff's] qualifications." *Salamon*, 514 F.3d at 231.

> Plaintiff states in his declaration that:
>
> [Defendant's peer review process] objected to my performing surgical procedures in the specific manner that I was trained to do them, specifically when not to perform laparoscopic surgery, the manner of inserting chest tubes, the length of time I was taking to perform various surgical procedures and eventually [the hospital] mandated that I would have to obtain additional training in order to return to work at [the hospital].

Henry Decl. ¶ 22. None of these described objections appear to relate to anything other than health and safety matters.

The record is unclear as to what recommendations resulted from the peer review process. Apparently, the MEC issued recommendations, which are not in the record. *See, e.g.*, Pl.'s Ex. E, ECF No. 40-8 at 2 (mentioning the MEC recommendations). The Fair Hearing Panel Report suggested additional safeguards, but those further protected Plaintiff from the type of long-term review in *Salamon* that had little basis in quality of care standards. *See id.* at 4-5. For example, the report required Defendant to work with Plaintiff to secure a professional development loan "on very favorable terms" to help him attend a

remedial course tailored to the issues raised with Plaintiff's standard of care.[7] *Id.*

at 4. Once Plaintiff completed the program, Plaintiff's privileges would be

restored with the condition that a mutually-agreed upon proctor review Plaintiff's

performance in a minimum of three laparoscopic cases. *Id.* Upon successful

completion of this review, Plaintiff's full privileges would be restored. *Id.*

Plaintiff was therefore not subjected to an endless and onerous review process of

the type described in *Salamon*. Moreover, unlike the defendant in *Salamon*,

Defendant here did not "recommend[] changes to [Plaintiff's] practice based on

---

[7] Plaintiff conclusively states that the remedial program was designed to "dictate the particular details of my medical practice including, among other things, reducing the length of time to perform certain surgical procedures, which was completely unwarranted." Henry Decl. ¶ 22. As a general matter, a nonmoving party cannot rely on unsupported, conclusory allegations in his or her own affidavit to create an issue of material fact. *See Delange v. Dutra Constr. Co.*, 183 F.3d 916, 921 (9th Cir. 1999) ("[W]here, as here, the nonmoving party relies only on his own affidavit to oppose summary judgment, he cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." (citation and internal editorial marks omitted)). To assert that the peer review process was unwarranted, Plaintiff also relies on Dr. Garth Jacobsen's letter reviewing his work, Pl.'s Ex. D, ECF No. 40-7; Pl.'s CSF ¶ 3, ECF No. 41. Plaintiff has provided no context for Dr. Jacobsen's letter, even basic information like why Dr. Jacobsen's review was performed and the role (if any) this letter played in the peer review process. Without this information, the Court gives little weight to Plaintiff's Exhibit D. Accordingly, the Court concludes that Plaintiff does not create an issue of material fact concerning whether the peer review process was "completely unwarranted."

their financial impact to the department[,]" *Salamon*, 514 F.3d at 229, nor does Plaintiff suggest as much.

Accordingly, based on the record available, no reasonable fact finder could find that Defendant's peer review process went beyond ensuring plaintiff's work met standards of care. *See id.* Thus, the peer review process did not create an employment relationship.

Construing all evidence and inferences therefrom on behalf of Plaintiff, Defendant did not have the "right to control the manner and means" of Plaintiff's practice of medicine, and thus Plaintiff is an independent contractor for Title VII purposes. *Darden*, 503 U.S. at 323 (citing *Reid,* 490 U.S. at 751). Accordingly, Plaintiff is not protected under Title VII, and the Motion is granted.

///

///

///

///

///

///

///

///

# V. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary

Judgment is GRANTED.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, January 28, 2019.

Jill A. Otake
United States District Judge

*Henry v. Adventist Health Castle Medical Ctr., et al.*, Civ No. 18-00046 JAO-KJM, Order
Granting Motion for Summary Judgment, ECF No. 37